UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE DINO A. DIEZ,<br><br>          Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>          Defendant. | Case No.: 18-CV-156-DMS(WVG)<br><br>**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

On March 27, 2014, Jose Dino A. Diez ("Plaintiff") applied for Social Security Disability Insurance under Title II of the Social Security Act ("Title II" or "Act"). Nancy A. Berryhill, Acting Commissioner of Social Security ("Commissioner" or "Defendant"), twice denied Plaintiff's application – initially, on June 27, 2014, and upon reconsideration on March 6, 2015. This action followed. Before the Court are Plaintiff and Defendant's ("Parties") cross-motions for summary judgment for purposes of this Report and Recommendation. For the below reasons, the Court RECOMMENDS that Plaintiff's summary judgment motion be DENIED and Defendant's summary judgment motion be GRANTED.

/ / /

/ / /

## I. PROCEDURAL HISTORY

Plaintiff alleges that he suffers from disabilities so severe that he is unable to work to any extent. As such, Plaintiff protectively filed for Title II Disability Insurance Benefits on March 27, 2014, alleging disability since January 31, 2009 (AR 210). On June 27, 2014, the Commissioner denied Plaintiff's application and did the same on March 6, 2015 upon reconsideration (AR 122-127; 129-134). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ's decision followed on August 8, 2017 and was unfavorable to Plaintiff (AR 16-26). Specifically, the ALJ found that Plaintiff was not disabled and, in turn, was not entitled to Title II benefits because he was capable of performing work that exists in large numbers in the national economy. In response, Plaintiff sought administrative review of the ALJ's decision, but the Appeals Council denied the request (AR 1-6). On January 23, 2018, Plaintiff filed this action.

## II. FACTUAL BACKGROUND

### a. Plaintiff's Medical Condition and History

Plaintiff is 55 years old and served in the United States Navy for 20 years. On or around January 31, 2009, Plaintiff's purported disability set in and he was honorably discharged that same year. Plaintiff alleges that he suffers extensive physical and mental impairments, namely gout, arthritis, and acid reflux disease as well as depression and bipolar disorder. Plaintiff adds that these impairments prevent him from lifting, squatting, bending, standing, walking, kneeling, climbing stairs, remembering information, completing tasks, concentrating, understanding, following instructions, and getting along with others. According to Plaintiff, these impairments have left him totally disabled and unable to work. To this end, Plaintiff has not performed in any gainful activity since January 31, 2009, the date Plaintiff assigns to the onset of his disability (AR 18).

In 2009, Plaintiff was diagnosed with gout and treated with various clinicians for the condition in both of his knees and ankles, as well as his toes (AR 18-19; 21). Since his diagnosis, Plaintiff's symptoms have been routinely characterized as unexceptional. For example, in August 2014, Plaintiff experienced soft tissue swelling without any acute

2
18-CV-156-DMS(WVG)

bony abnormality. Plaintiff was prescribed Ibuprofen and indomethacin, and his subsequent medical records confirmed that the medication effectively controlled his gout (AR 21; 496; 1456; 1472). Further, Plaintiff's clinician at the time, Dr. Arnold Gass, concluded that Plaintiff did not have any functional limitations unless he experienced an *acute* gout flare-up. Plaintiff corroborated the same by noting that he only experienced limitations during a flare-up and that he was, overall, feeling well.

Throughout 2013, Plaintiff intermittently expressed concern to his treating physicians about experiencing sleeplessness (AR 21). A polysomnogram followed and revealed that Plaintiff had sleep apnea. Plaintiff was provided a CPAP machine to manage his condition while he slept. However, Plaintiff admitted to not using the machine for nearly one year (AR 21; 1068; 1276). By December 2016, Plaintiff's sleep patterns improved, and Plaintiff acknowledged that he was sleeping well (AR 1276).

### b. Dr. Nicholson's Consultative Examination

In February 2015, Dr. Gregory Nicholson performed a consultative examination of Plaintiff. Dr. Nicholson reported that Plaintiff was in a depressed mood but cooperative; maintained an organized thought process and good eye contact; and was able to comprehend, remember, and carry out one or two-step job instructions and follow more complex instructions (AR 533). As part of his appointment, Plaintiff underwent a CT scan, the results of which Dr. Nicholson deemed normal. Dr. Nicholson ultimately concluded that Plaintiff was mildly limited in (1) regularly reporting to work; (2) performing activities reliably and without additional supervision; and (3) consistently concentrating (AR 535). Dr. Nicholson added that Plaintiff's headaches were non-severe and fully relieved by prescription medication and Ibuprofen (AR 533).

In May 2017, Plaintiff underwent diagnostic imaging after he reported recurring pain in both knees. The imaging revealed that Plaintiff's right knee showed some degeneration, albeit without acute findings (AR 18-19; 21). Plaintiff's left knee showed moderate patellofemoral joint osteoarthritis and mild medial and lateral compartment osteoarthritis (AR 1459; 1523). Subsequent x-rays taken of Plaintiff's feet were

unremarkable (AR 24; 663). Consistent with the same, Plaintiff's medical history and testimony at the administrative hearing confirmed that Plaintiff was able to get around and go to his children's school, grocery stores, church, the movie theater, and restaurants on a regular basis (AR 268).

### c. The ALJ's August 8, 2017 Decision

Considering Plaintiff's medical record and testimony at the administrative hearing, the ALJ held that Plaintiff was not disabled and was thus not entitled to Title II benefits. In relevant part, the ALJ determined that Plaintiff:

(1) had not engaged in substantial gainful activity since January 31, 2009;

(2) suffered severe impairments consisting of gout, psychotic disorder, depressive disorder, anxiety disorder, osteoarthritis, and obstructive sleep apnea;

(3) experienced non-severe headaches that caused nothing more than minimal functional limitations;

(4) had mild limitations in understanding, remembering, or applying information; interacting with others; and adapting or managing himself;

(5) had moderate limitations in concentrating, persisting, or maintaining pace;

(6) had the residual functional capacity to perform light work as defined in 20 CFR § 404.1567(b) and could perform simple, routine tasks;

(7) could not perform any past relevant work as a security guard, powerhouse mechanic, or assistant career case aid (AR 16-26); and

(8) had at least a high school education and is able to communicate in English.

Relatedly, the ALJ found that (9) considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including, but not limited to, hand packer; information clerk; and ticket taker (AR 16-26).

The ALJ applied varying weight to the evidentiary sources that informed his final decision. Most notable was the ALJ's reliance on medical evidence, including clinical findings of record, effectiveness of treatment, and Plaintiff's activities of daily living that

4

"illustrate[d] greater functional abilities than alleged" (AR 533; see also AR 268). The ALJ repeatedly noted throughout his decision that Dr. Nicholson's consultative examination findings were consistent with Plaintiff's medical history and Plaintiff's own testimony and conduct at the administrative hearing (AR 21-24). In turn, the ALJ assigned little weight to Plaintiff's daughter's representations that Plaintiff has depression and stays at home because the record demonstrated that, despite Plaintiff's multiple impairments, he appropriately interacted with others on a regular basis. The ALJ thus concluded that Plaintiff's depression did not warrant imposing additional restrictions in the residual functional capacity.

Further, the ALJ placed minimal weight on the Department of Veteran's Affairs' finding that Plaintiff has 100 percent service-connected disabilities because, as a matter of law, "a determination of disability by another agency is not binding on [the Social Security] Administration" (AR 23; 219.) In this vein, the ALJ placed only partial weight on the State agency consultants' opinion. Moreover, the ALJ noted that the State agency consultants concluded contrary to what Plaintiff's medical records suggested (AR 24). For example, the State agency consultants concluded that Plaintiff's mental impairments were not severe; however, the medical evidence indicated the seriousness of Plaintiff's mental condition given his psychotic disorder and depression (AR 101-103; 115-117). The ALJ also observed that the State agency consultants erroneously determined that Plaintiff could perform physical work that frequently involved crawling, crouching, kneeling, stooping, balance, and climbing stairs (AR 101-103; 115-117).

Finally, the ALJ accepted the vocational expert's testimony for the limited purpose of determining what jobs, if any, existed in the national economy that would have aligned with Plaintiff's residual functional capacity (AR 25). In doing so, the ALJ acknowledged that the vocational expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles (AR 25; 92-93).

///

///

## III. LEGAL STANDARD

### a. Title II Analysis

Under Title II of the Social Security Act, an applicant merits Social Security Disability Insurance if (1) he suffers from a medically determinable impairment that has endured or can be expected to endure for at least twelve consecutive months or is reasonably likely to result in death; and (2) as a result of his impairment, he cannot perform the work that he previously performed or any other gainful work that the national economy offers. 42 U.S.C. § 423(d)(2)(A). At all times, the applicant bears the burden to establish his disability and entitlement to benefits. *Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 689 (9th Cir. 2007); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). Where the applicant makes this showing, the burden shifts to the Commissioner to prove that the applicant is still able to work and that there is work available for him. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

To evaluate whether an applicant is qualified under the Act, the court undertakes a five-step inquiry, namely whether (1) the applicant is presently working in a substantially gainful activity; (2) the subject impairment is severe; (3) the impairment "meets or equals" one of the list of impairments itemized in the Social Security Regulations; (4) the applicant is able to perform any work that he has not previously performed; and (5) the claimant is able to perform any other work, where, if so, the Commissioner bears the burden of proving "that there are a significant number of jobs in the national economy that the [applicant] can do." 20 C.F.R. § 404.1520 (1999). The court's inquiry ends where an applicant is found to be "disabled" or "not disabled" at any step in the analysis. *Id*.

### a. Judicial Review of Administrative Decision on Title II Applications

Section 405(g) of the Act authorizes unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. § 405(g). The scope of judicial review is limited, as the Commissioner's denial of benefits "will be disturbed only if it not supported by substantial evidence or is based on legal error." *Brawner v.*

*Sec'y of Health and Human Servs.*, 830 F.2d 432, 433 (9th Cir. 1988); see also *Sandgather v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (substantial evidence is "more than a mere scintilla" but less than a preponderance)).

At all times, the court must consider the record in its totality, weighing evidence that both supports and weakens the Commission's conclusions. *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). Where the ALJ failed to apply the proper legal standards in reaching her decision, the court must set aside the ALJ's decision. *Bayliss v. Barnhart,* 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). However, where the evidence supports more than one rational interpretation, the court must uphold the Administrative Law Judge's ("ALJ") decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Deference, under such circumstances, is required. *Bayliss*, *supra*, 427 F.3d at1214 n.1; *Sandqathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997).

## IV. DISCUSSION

### a. The ALJ Properly Assessed Plaintiff's Residual Functional Capacity

As a foundational matter, Plaintiff disputes the ALJ's determination as to Plaintiff's residual functional capacity and, in turn, the ALJ's finding of non-disability. At all times, [it] is clear that it is the responsibility of the ALJ … to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). Consequently, the ALJ is considered the final arbiter in resolving ambiguities in the medical evidence; thus, his conclusions are subject to substantial deference. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record").

Here, the ALJ's finding on Plaintiff's residual functional capacity hinged upon Plaintiff's medical records, which primarily included State agency physician assessments and Dr. Nicholson's consultative examination of Plaintiff. Taken in turn, the ALJ's determination was more measured than that of either State agency physician and appropriately accounted for Plaintiff's self-reporting that he was limited in the daily

functions he could perform. Specifically, where the physicians determined that Plaintiff could perform a range of medium work, the ALJ found that only light range work suited Plaintiff's physical impairments, and that Plaintiff could occasionally crawl, crouch, kneel, stoop, and balance but never climb ladders, ropes, or scaffolds.

Further, where the physicians determined that Plaintiff's mental impairments were not severe, the ALJ disagreed based on Plaintiff's medical history that noted his diagnoses of psychotic disorder and depression. Plaintiff's own testimony about the effects of treatment on his mood and wellbeing partly informed the ALJ's conclusion that the medical record substantiated that Plaintiff suffered mental impairments that, to some extent, affected his ability to work. Accordingly, the ALJ placed appropriate weight onto the State agency physicians' evaluations of Plaintiff's health, given that most of their conclusions understated the extent of Plaintiff's physical and mental impairments and were inconsistent with the medical evidence.

Concurrently, the ALJ placed substantial weight on Dr. Nicholson's consultative examination of Plaintiff, for the very reason that Dr. Nicholson undertook a comprehensive assessment of Plaintiff's health and his findings were largely consistent with Plaintiff's medical records. The ALJ was right to do so. See *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992) (an applicant seeking Title II benefits must show that he suffers an impairment that results from "anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."). Dr. Nicholson performed a series of evaluations, that included diagnostic imaging, which collectively revealed that Plaintiff was in good health overall.

As to Plaintiff's psychological state, Dr. Nicholson determined that Plaintiff was in a depressed mood; his insight and judgment were intact; his thought contents were normal; and he was alert and oriented and maintained communication with friends and family and the outside world by regularly going to his children's school, church, restaurants, and other public places to convene. Each of these circumstances pointed to Plaintiff suffering, at most, mild limitations. Dr. Nicholson added that, while Plaintiff

continued to suffer from headaches, they were non-severe in nature. Plaintiff himself confirmed that the headaches were relieved by medication.

Further, Plaintiff's other examinations, including imaging diagnostics such as x-rays and radiographs, were unremarkable in nature and revealed that Plaintiff's primary physical impairment was osteoarthritis. Plaintiff's arthritis was accompanied by some discomfort and stiffness, but the condition in no way left Plaintiff unable to get around or perform light work activity. Plaintiff's regular outings, undisputed ability to care for himself, self-reported improvement in depression following his discharge from military duty, and disclosure to Dr. Nicholson that he was sleeping well with no hallucinations or suicide ideations, reinforced the conclusion.

The consistency of the above circumstances affirms the ALJ properly looked to Dr. Nicholson's consultative evaluation, Plaintiff's related medical records, and Plaintiff's own admissions in deciding Plaintiff's residual functional capacity. 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give [it.]"); see *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (deciding, in relevant part, that "[examining physician's] opinion alone constitutes substantial evidence because it rest[ed] on his own independent examination"); see also *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (noting that "where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

### b. The ALJ Appropriately Exercised His Independent Discretion and Was Not Bound by the Veteran Affairs' Assessment of Plaintiff's Disability

In disputing the validity of the ALJ's decision, Plaintiff implicates the issue of whether the ALJ appropriately set aside the Veteran Affairs' ("VA") assessment of Plaintiff's medical condition. It is worthy of mention that Plaintiff receives disability benefits from the VA in light of the VA's assessment that Plaintiff is 100 percent disabled (AR 219). While acknowledging the VA's finding, the ALJ properly noted that

he was in no way bound by it and, in doing so, exercised his independent discretion regarding Plaintiff's varying medical impairments (AR 23).

The distinction between the VA and the Social Security Administration is self-evident in that they each constitute separate administrative entities that are governed by their own policies, practices, and procedures. The law confirms the same. 20 C.F.R § 404.1504 ("Because a decision by any other government agency or a non-governmental entity about whether you are disabled, blind, or entitled to any benefits is based on its rules, it is not binding on [the Social Security Administration] and is not [its] decision about whether you are disabled… under [its] rules."). Accordingly, the ALJ was under no obligation to defer to the VA's disability finding with respect to Plaintiff. In turn, the ALJ properly decided the issue of Plaintiff's residual functional capacity and disability by exercising his independent judgment and relying on the medical evidence presented and Plaintiff's own testimony during the administrative hearing.

### c. The ALJ Appropriately Considered the Vocational Expert's Testimony Concerning Plaintiff's Ability to Work within the National Economy

Plaintiff's dispute over the ALJ's findings also raises the matter of whether the ALJ properly relied upon vocational expert testimony to conclude that Plaintiff was still capable of working in occupations that exist in significant numbers in the national economy. The law is clear that "A vocational expert's recognized expertise provides the necessary foundation for his or her testimony" and, therefore, "no additional foundation is required." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2005). Here, the vocational expert presented a survey of positions available in significant numbers within the national economy that would have allowed Plaintiff to perform sedentary work, namely hand packer, information clerk, and ticket taker. These positions were squarely consistent with Plaintiff's impairments, which the ALJ determined were insignificant enough to allow Plaintiff to perform light work activity. 20 C.F.R. § 404.1567(b) ("If someone can do light work, we determine that he or she can also do sedentary work.").

Accordingly, the ALJ properly found that the vocational expert's testimony was reliable and aligned with the medical evidence presented.

## V. CONCLUSION

For the foregoing reasons, the Court recommends that Plaintiff's summary judgment motion be DENIED and Defendant's cross-summary judgment motion be GRANTED. This Report and Recommendation is hereby submitted to the United States District Judge Dana M. Sabraw, pursuant to 28 U.S.C. section 636(b)(1) and Federal Rule of Civil Procedure 72(b).

IT IS ORDERED that no later than **September 3, 2019** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation." No reply briefs in response to the Objections will be accepted.

**IT IS SO ORDERED.**

Dated: August 19, 2019

Hon. William V. Gallo
United States Magistrate Judge